UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.

WM AVIATION, LLC and TRICOR
INTERNATIONAL CORPORATION,
Individually and as Assignees of UNITED
STATES AVIATION UNDERWRITERS,
UNITED STATES AVIATION INSURANCE
GROUP, LIBERTY MUTUAL INSURANCE
COMPANY, AND ACE AMERICAN
INSURANCE COMPANY,

     *Plaintiffs,*

v.

CESSNA AIRCRAFT COMPANY,

     *Defendant.*

_____/

## COMPLAINT

WM Aviation, LLC and Tricor International Corporation, individually and as assignees of United States Aviation Underwriters, United States Aviation Insurance Group, Liberty Mutual Insurance Company, and ACE American Insurance Company, sue Cessna Aircraft Company, as follows:

### Nature of Action, Jurisdiction and Venue

1.     This is an action seeking damages resulting from the April 3, 2008 crash of Plaintiffs' Cessna Citation X jet, tail number N750WM.

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states.

3.     Venue is proper in this judicial district as the Defendant does business in this district, WM Aviation, LLC and Tricor International Corporation's principal places of business are in this judicial district, and the events giving rise to the claims at issue in this action occurred within this judicial district.

<u>**The Parties**</u>

4.     At all material times, WM Aviation, LLC was a North Carolina limited liability company with its principal place of business in Maitland, Florida.

5.     At all material times, Tricor International Corporation was a Florida corporation with its principal place of business in Maitland, Florida.

6.     At all material times, Cessna Aircraft Company was a foreign corporation with its principal place of business in Wichita, Kansas and at all material times operated a Citation Service Center in Orlando, Florida, at which Cessna performed maintenance on the subject aircraft.

<u>**General Allegations**</u>

7.     <u>The Aircraft</u>:  Cessna manufactured a Citation X jet with serial number 750-230.

8.     Plaintiffs and Cessna entered into a contract on February 19, 2004 for the purchase of a new 2004 Citation X jet with serial number 750-230.  It was assigned registration number N750WM by the Federal Aviation Administration (the "Aircraft").

9.     <u>Maintenance:</u> Cessna owns and operates the Orlando Citation Service Center.

10.     After the time of purchase, maintenance of the Aircraft was exclusively performed by and through Cessna at its Orlando Citation Service Center.

11.     Cessna's Orlando Citation Service Center held itself out to the public as the largest Citation Service Center outside of Wichita, operating in a "state-of-the-art" building.

2

12.     On February 2, 2008, Plaintiffs brought the Aircraft to the Orlando Citation Service Center and told Cessna that the Aircraft had a hydraulic leak at the left engine pylon.

13.     Cessna's mechanics inspected the Aircraft and found that a hydraulic reservoir was seeping at the seam and recommended that the hydraulic reservoir be replaced at the next service.

14.     On April 2, 2008, the Aircraft's next visit to the Orlando Citation Service Center, Cessna replaced the hydraulic reservoir and approved the Aircraft to be returned to service.

15.     Cessna did not advise the Plaintiffs that it replaced the hydraulic reservoir with a used reservoir that had been removed from another aircraft and refurbished. It also did not advise the Plaintiffs that the refurbished reservoir previously had a broken indicator that showed the reservoir was full when it was in fact empty.

16.     On April 3, 2008, the Plaintiffs' crew flew the Aircraft from the Orlando Citation Service Center in Orlando, Florida to New York, New York.

17.     Shortly before landing, the hydraulic system which Cessna serviced the previous day malfunctioned and the primary brake system failed.

18.     After the primary brake system failed, the pilots used the emergency brakes. The emergency brakes also malfunctioned, which caused the Aircraft to skid off the runway at John F. Kennedy International Airport and sustain extensive physical damage to the fuselage, left wing, left main landing gear, and other components (the "Incident").

19.     After the Incident, Cessna admitted that it did not have a system in place to check the functionality of emergency brakes on its Citation jets.

20.     <u>Cessna's Post-Incident Activities</u>: Plaintiffs contacted Cessna after the Incident and learned that Cessna is the only entity that can repair the Aircraft because it refuses to share its proprietary data with third-parties.

3

21.     Plaintiffs also learned that Cessna is the only entity that can certify that repairs to a Citation X jet are sufficient to return a repaired aircraft to service.

22.     Cessna conducted several inspections of the Aircraft post-Incident and developed four repair scenarios in July 2008, and ultimately created two estimates in September 2008.

23.     Plaintiffs did not agree with Cessna's proposed scope of repairs and as a result, the Aircraft has not been repaired to date.

24.     <u>Lawsuit Against Insurance Companies</u>: At the time of the Incident, the Aircraft was insured under a 360° All-Clear Aircraft Policy by United States Aviation Underwriters, United States Aviation Insurance Group, Liberty Mutual Insurance Company, and ACE American Insurance Company.

25.     The insurance companies refused to pay for repairs in excess of the estimates created by Cessna in September 2008.

26.     Plaintiffs refused to accept the Cessna repair estimate, instead contending that the Aircraft cannot be repaired for less than $19,275,000 and accordingly, it is a "total loss" as defined by the Policy.

27.     As a result of the disagreement regarding the applicable insurance benefits, Plaintiffs filed a lawsuit against their insurance companies seeking to recover the full policy limits of $19,275,000.

28.     The Plaintiffs and their insurers reached a settlement wherein the insurers assigned to the Plaintiffs their subrogation rights under the policy. The Plaintiffs therefore seek subrogation for funds paid by the insurers in settlement of their claim, in addition to their own uncompensated damages.

29.     <u>Conditions Precedent</u>: All conditions precedent to this action have been performed or waived.

30.     <u>Damages Common to All Counts:</u> The Aircraft requires substantial repairs to return it to the condition it was in immediately prior to the Incident.

31.     USAU, USAIG, Liberty Mutual, and ACE American are subrogated to Plaintiffs' claims against Cessna to the extent of payments made to the Plaintiffs' under the Policy. These insurers assigned their right of subrogation to Plaintiffs, who seek to recover these damages here.

32.     Plaintiffs have also sustained consequential damages including but not limited to hangar rental fees, insurance premiums paid on the unrepaired Aircraft, financing costs, loss in value, business interruption, and the costs of chartering replacement aircraft since April 3, 2008.

## COUNT I - NEGLIGENCE

33.     Plaintiffs reallege the facts set out in Paragraphs 1 through 32 as if fully set forth herein.

34.     Cessna agreed to conduct routine maintenance on the Aircraft, including replacement of the hydraulic reservoir.

35.     This agreement imposed upon a Cessna a duty to use reasonable care in its maintenance and repair of the Aircraft.

36.     Cessna breached its duty to Plaintiffs by installing a replacement hydraulic reservoir that it knew or should have known was defective.

37.     Cessna also breached its duty to Plaintiffs by failing to re-fill the reservoir with hydraulic fluid after replacing that part.

38.     Cessna further breached its duty to Plaintiffs by asserting that the Aircraft was fit for a return to service, even though it knew or should have known that the hydraulic reservoir had not been adequately repaired and the Aircraft was not safe for use.

39.     The Aircraft crashed the day after Cessna replaced the hydraulic reservoir on its maiden flight from the Orlando Citation Service Center, and the Incident was caused by Cessna's failure to properly maintain and repair the Aircraft.

40.     Cessna failed to properly test the repair of the hydraulic system following its repair by Cessna at the Orlando Citation Service Center.

41.     As a result of the Incident, Plaintiffs have sustained damages that include the cost to repair or replace the Aircraft, and consequential damages including but not limited to hangar rental fees, insurance premiums paid on the unrepaired Aircraft, financing costs, loss in value, business interruption, and the costs of chartering replacement aircraft since April 3, 2008.

WHEREFORE, WM Aviation, LLC and Tricor International Corporation demand judgment against Cessna Aircraft Company, for damages including but not limited the cost to repair the Aircraft to the condition it was in immediately prior to the Incident; consequential damages including but not limited to hangar rental fees, insurance premiums paid on the unrepaired Aircraft, financing costs, loss in value, business interruption, and the costs of chartering replacement aircraft since April 3, 2008; pre- and post-judgment interest; attorney's fees; costs and any further relief this Court deems equitable, just and proper.

## COUNT II – PRODUCTS LIABILITY

42.     Plaintiffs reallege the facts set out in Paragraphs 1 through 32 as if fully set forth herein.

43.     Cessna designed and manufactured the emergency brake system on the Aircraft and other Citation X jets.

44.     After the Aircraft's primary brake system failed as a result of Cessna's negligent repair of the hydraulic reservoir, the crew used the Aircraft's emergency brake system which also failed and caused the Aircraft to crash.

6

45.  Cessna does not have any procedures in place to test the functionality of emergency brake systems on its aircrafts post-sale. As a result, the emergency brake system on Cessna's Citation X jets are defective and unreasonably dangerous, and provided to the consumer without any reasonable assurance that the system was working.

46.  Cessna's failure to conduct periodic testing of the Aircraft's emergency brake system caused the Aircraft to skid of the runway at John F. Kennedy International Airport, and severely damaged the Aircraft.

WHEREFORE, WM Aviation, LLC and Tricor International Corporation demand judgment against Cessna Aircraft Company, for damages, including but not limited the cost to repair the Aircraft to the condition it was in immediately prior to the Incident; consequential damages including but not limited to hangar rental fees, insurance premiums paid on the unrepaired Aircraft, financing costs, loss in value, business interruption, and the costs of chartering replacement aircraft since April 3, 2008; the recall of other Citation X jets currently in service to inspect their emergency brake systems; pre- and post-judgment interest; attorney's fees; costs and any further relief this Court deems equitable, just and proper.

## COUNT III – NEGLIGENT MISREPRESENTATION

47.  Plaintiffs reallege the facts set out in Paragraphs 1 through 32 as if fully set forth herein.

48.  Cessna, through its agents and employees, falsely represented to the Plaintiffs that it properly performed the maintenance on the Aircraft's hydraulic system and that it was safe for return to service.

49.  Cessna did not properly repair the hydraulic system and the Aircraft was not safe for return to service, as evidenced by the Incident the following day in its first flight after undergoing the repairs.

50.     Cessna and its employees or agents also did not tell the Plaintiffs and their agents that it had replaced the hydraulic reservoir with a "refurbished" reservoir from another aircraft, even though Cessna and its agents and employees knew that the "refurbished" reservoir had been removed because it did not correctly indicate the amount of hydraulic fluid in the reservoir.

51.     Cessna and its employees or agents also did not tell the Plaintiffs and their agents that the hydraulic systems had not been cold tested.

52.     Cessna's agents and employees made the representations and omissions described above even though they knew or should have known that the representations were false and the omissions were critical.

53.     The representations and omissions described above were made with the intent that Plaintiffs and the crew of the Aircraft should rely upon them in operating the Aircraft.

54.     At the time of the Incident, Plaintiffs, their employees or agents and the crew of the Aircraft, did not know that the representations described above were false, and this critical information had not been disclosed.  As a result, the Plaintiffs, their employees or agents and the crew of the Aircraft believed that the Aircraft was safe for return to service.

55.     As a result of Cessna's negligent misrepresentations and omissions, Plaintiffs returned the Aircraft to service and it was damaged by the Incident.

WHEREFORE, WM Aviation, LLC and Tricor International Corporation demand judgment against Cessna Aircraft Company, for damages including but not limited the cost to repair the Aircraft to the condition it was in immediately prior to the Incident; consequential damages including but not limited to hangar rental fees, insurance premiums paid on the unrepaired Aircraft, financing costs, loss in value, business interruption, and the costs of chartering replacement aircraft since April 3, 2008; pre- and post-judgment interest; attorney's fees; costs and any further relief this Court deems equitable, just and proper.

## COUNT IV – CLAYTON ACT VIOLATION (15 U.S.C. §14)

56.     Plaintiffs reallege the facts set out in Paragraphs 1 through 32 as if fully set forth herein.

57.     Cessna sells to the general public the aircrafts that it manufactures, as well as maintenance and service for those aircrafts.

58.     Cessna possesses market power in the business jet market.

59.     Cessna does not afford purchasers of its business jets any choice but to pay Cessna to maintain and service the aircraft that it manufactures for the following reasons:

> (1) Cessna maintains a covert business practice in which it does not disclose to purchasers of Citation X jets that it acts as the sole investigating agent at crash scenes.

> (2) Cessna does not disclose to purchasers of Citation X jets that it possesses proprietary data used to repair the fuselage and that no other entity can repair the fuselage without the proprietary data.

> (3) Cessna does not disclose to purchasers of Citation X jets that it is the only entity with authority to determine the airworthiness of an aircraft post-repair.

60.     This tying arrangement forecloses a substantial volume of commerce by requiring purchasers of Cessna business jets to have Cessna, and not third-parties, maintain, service, and repair their aircrafts.

61.     This business practice constitutes an unlawful tying arrangement because the sale of the aircraft is tied to the use of Cessna repair facilities.

62.     Cessna possesses coercive power in the marketplace that forces Plaintiffs to accept Cessna's repair services and products.

9

63.    Cessna violated 15 U.S.C. §14 (the Clayton Act) by selling the Aircraft to Plaintiffs with the knowledge that the Plaintiffs were thereafter obligated to have any and all repairs and maintenance on the Aircraft performed by Cessna as a result of its proprietary data and self-imposed sole authority to determine whether the Aircraft can be returned to service.

64.    Cessna's actions have created or tended to create a monopoly in the line of commerce by tying the repair and maintenance of the Aircraft and other Citation jets to the purchase of the jet from Cessna.

WHEREFORE, WM Aviation, LLC and Tricor International Corporation demand judgment against Cessna Aircraft Company, for treble damages pursuant to 15 U.S.C. §15, including but not limited the cost to repair the Aircraft to the condition it was in immediately prior to the Incident; consequential damages including but not limited to hangar rental fees, insurance premiums paid on the unrepaired Aircraft, financing costs, loss in value, business interruption, and the costs of chartering replacement aircraft since April 3, 2008; pre- and post-judgment interest; attorney's fees pursuant to 15 U.S.C. §15; costs and any further relief this Court deems equitable, just and proper.

## COUNT V – FLORIDA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, FLA. STAT. §501.204

65.    Plaintiffs reallege the facts set out in Paragraphs 1 through 32 as if fully set forth herein.

66.    Cessna did not disclose to Plaintiffs prior to purchasing the Aircraft that Cessna is the only entity that could certify that any repairs were sufficient to return the Aircraft to service because it will not share its proprietary engineering data with third-parties.

67.    Because Cessna will not share its proprietary engineering data with third-parties, it is the only entity capable of repairing damage to the Aircraft.

10

68. Cessna also did not disclose that it is the only federally-certified investigator of any crash sites involving the Aircraft.

69. Cessna's practice of refusing to share its proprietary engineering data with third-parties in connection with the repair, inspection, or certification of the efficacy of repairs to Citation X jets is a deceptive trade practice, as purchasers of its aircrafts are unlawfully tied to Cessna for all repair, inspection, and certification of repairs of their aircrafts.

70. Cessna's refusal to share its engineering proprietary data with third-parties coupled with its exclusive authority to inspect crash scenes provides an incentive for Cessna to engage in accident reconstruction investigation and analysis in an inaccurate and self-serving manner and to fail to report and/or destroy crucial evidence.

71. Plaintiffs did not learn of Cessna's practices until after the Incident.

WHEREFORE, WM Aviation, LLC and Tricor International Corporation demand judgment against Cessna Aircraft Company, for damages including but not limited the cost to repair the Aircraft to the condition it was in immediately prior to the Incident; consequential damages including but not limited to hangar rental fees, insurance premiums paid on the unrepaired Aircraft, financing costs, loss in value, business interruption, and the costs of chartering replacement aircraft since April 3, 2008; pre- and post-judgment interest; attorney's fees pursuant to Fla. Stat. §501.2105; costs and any further relief this Court deems equitable, just and proper.

## COUNT VI – FLORIDA ANTI-TRUST ACT (FLA. STAT. §§542.15-542.36)

72. Plaintiffs reallege the facts set out in Paragraphs 1 through 32 as if fully set forth herein.

73. Cessna engaged in a conspiracy to restrain trade or commerce in the State of Florida in violation of Florida Statute §542.18 by requiring purchasers of its Citation X jets to

use Cessna for all maintenance, service, and repair of those jets by committing the following acts:

> (1) Cessna maintains a covert business practice in which it does not disclose to purchasers of Citation X jets that it acts as the sole investigating agent at crash scenes.

> (2) Cessna does not disclose to purchasers of Citation X jets that it possesses proprietary data used to repair the fuselage and that no other entity can repair the fuselage without the proprietary data.

> (3) Cessna does not disclose to purchasers of Citation X jets that it is the only entity with authority to determine the airworthiness of an aircraft post-repair.

74. In the alternative, Cessna is attempting to monopolize the repair, service, and maintenance market for Citation X jets in the State of Florida because as a result of its refusal to share its proprietary data with third-parties, it is ensuring that purchasers of its Citation X jets must use Cessna to repair, service, and maintain those aircrafts, in violation of Florida Statute §542.19.

75. This unlawful tying arrangement forecloses a substantial volume of commerce in the State of Florida by requiring purchasers of Cessna business jets to have Cessna, and not third-parties, maintain, service, and repair their aircrafts.

76. Plaintiffs have been damaged by Cessna's acts because by disagreeing with Cessna's repair scheme for the Aircraft, Plaintiffs have been unable to have the Aircraft repaired. As a result, the Aircraft remains in its post-Incident condition and is unusable.

WHEREFORE, WM Aviation, LLC and Tricor International Corporation demand judgment against Cessna Aircraft Company, for treble damages pursuant to Fla. Stat. §542.22, including but not limited the cost to repair the Aircraft to the condition it was in immediately

prior to the Incident; consequential damages including but not limited to hangar rental fees, insurance premiums paid on the unrepaired Aircraft, financing costs, loss in value, business interruption, and the costs of chartering replacement aircraft since April 3, 2008; pre- and post-judgment interest; attorney's fees pursuant to Fla. Stat. §542.22; costs and any further relief this Court deems equitable, just and proper.

## TRIAL BY JURY

WM Aviation, LLC and Tricor International Corporation demand trial by jury of all issues so triable.

Dated this 16th day of December, 2011.

Respectfully submitted,

VER PLOEG & LUMPKIN, P.A.
100 S.E. 2nd Street, 30th Floor
Miami, FL 33131
(305) 577-3996
(305) 577 3558 *facsimile*

**Stephen A. Marino, Jr.**
Florida Bar No. 0079170
smarino@vpl-law.com
**Danya J. Pincavage**
Fla. Bar No. 0014616
dpincavage@vpl-law.com
*Attorneys for WM Aviation, LLC and
Tricor International Corporation*

13