# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**WM AVIATION, LLC and TRICOR
INTERNATIONAL CORPORATION,**

> **Plaintiffs,**

**v.**                                                        **Case No:  6:11-cv-2005-Orl-18GJK**

**CESSNA AIRCRAFT COMPANY,**

> **Defendant.**

---

### REPORT AND RECOMMENDATION

This cause came on for consideration, without oral argument, on the following motion:

| | |
|---|---|
| **MOTION:** | **PLAINTIFFS' MOTION FOR LEAVE TO DISCLOSE REBUTTAL EXPERT (Doc. No. 63)** |
| **FILED:** | **March 15, 2013** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

## I.   BACKGROUND

On May 10, 2012, Plaintiffs filed a six count Amended Complaint against Defendant. Doc. No. 26.  Plaintiffs allege that they entered into a purchase agreement for a new 2004 Cessna Citation X jet (hereafter "Aircraft"), bearing serial number 750-230.  Doc. No. 26 at 2 ¶ 8. Plaintiffs allege that at the time they signed the purchase agreement it was foreseeable that they would incur "hangar rental costs, financing charges, insurance premiums on an unusable aircraft, loss in value, and the costs of chartering replacement aircraft" if the Aircraft was damaged, but not completely destroyed, as a result of flaws in Cessna's manufacture or maintenance.  Doc. No. 26 at 2 ¶ 9.

Plaintiffs allege that Defendant owns and operates the Orlando Citation Service Center, and there are no other facilities in Florida that are authorized by Defendant to perform maintenance on the Aircraft.  Doc. No. 26 at 3 ¶ 10.  Plaintiffs allege that maintenance of the Aircraft was exclusively performed by Defendant.  Doc. No. 26 at 3 ¶ 11.  Plaintiffs allege that they brought the Aircraft to the Orlando Citation Service Center on February 2, 2008, advising Defendant that the "Aircraft had a hydraulic leak at the left engine pylon."  Doc. No. 26 at 3 ¶ 13.  Plaintiffs allege that Defendant's mechanics inspected the Aircraft and recommended the hydraulic reservoir be replaced the next time the Aircraft was serviced.  Doc. No. 26 at 3 ¶ 14.

Plaintiffs allege that Defendant's mechanics replaced the hydraulic reservoir on April 2, 2008, and approved the Aircraft to return to service.  Doc. No. 26 at 3 ¶ 15.  Plaintiffs allege this repair was memorialized by a signed service order.  Doc. No. 26 at 3 ¶ 15.  Plaintiffs allege that Defendant did not inform them that the replacement hydraulic reservoir was refurbished and before it was removed from the other aircraft that aircraft's hydraulic reservoir indicator indicated the reservoir was full, when in fact it was empty.  Doc. No. 26 at 4 ¶ 17.

Plaintiffs allege that, on April 3, 2008, they flew the Aircraft from the Orlando Citation Service Center to New York, New York.  Doc. No. 26 at 4 ¶ 18.  Plaintiffs allege that shortly before landing the hydraulic system malfunctioned and the primary brake system failed.  Doc. No. 26 at 4 ¶ 19.  Plaintiffs allege that the Aircraft's emergency brakes also failed, resulting in the Aircraft skidding off the runway at John F. Kennedy International Airport and causing "extensive physical damage to the fuselage, left wing, left main landing gear, and other components."  Doc. No. 26 at 4 ¶ 20.  Plaintiffs allege that Defendant is the only entity that can repair or certify that repairs to the Aircraft are sufficient to return to service because Defendant "refuses to share its proprietary data with third-parties."  Doc. No. 26 at 4 ¶¶ 21-22.

Plaintiffs allege that Defendant inspected the Aircraft several times after the crash, developed four repair scenarios, and ultimately created two estimates in September 2008.  Doc. No. 26 at 4 ¶ 23.  Plaintiffs allege that they did not agree with the proposed repairs because "they feared they were inadequate for safe flight, as the proposed repairs had never been made on another aircraft.  As a result, the Aircraft has not to date been repaired."  Doc. No. 26 at 4 ¶ 24.

Plaintiffs allege that at the time of the crash the Aircraft was insured by a "360° All-Clear Aircraft Policy by United States Aviation Underwriters, United States Aviation Insurance Group, Liberty Mutual Insurance Company, and ACE American Insurance Company."  Doc. No. 26 at 5 ¶ 25.  Plaintiffs allege that the insurers would not pay for repairs that exceeded Defendant's September 2008, estimates.  Doc. No. 26 at 5 ¶ 26.  Plaintiffs allege that they refused to accept Defendant's repair estimates because they had no assurances the Aircraft could be safely repaired for less than $19,275,000, which amount represents a total loss under the policy.  Doc. No. 26 at 5 ¶ 27.  Plaintiffs allege that they filed suit against the Aircraft's insurers for the policy limits of $19,275,000.  Doc. No. 26 at 5 ¶ 28.  Plaintiffs allege that they entered into a confidential settlement agreement, whereby the insurers assigned their subrogation rights to Plaintiffs.  Doc. No. 26 at 5 ¶¶ 29-31.

Based on the aforementioned allegations, Plaintiffs assert six claims for relief.  Counts I and IV assert claims for breach of the parties' purchase agreement.  Doc. No. 26 at 6, 8.  Counts II and V assert claims for breach of the parties' service agreement.  Doc. No. 26 at 7, 11.[1]  Count III asserts a claim for breach of warranty.  Doc. No. 26 at 8.  Count VI asserts a claim for a violation of Florida's Antitrust Act, Section 542.15, Florida Statutes et. seq.  Doc. No. 26 at 12.[2]

---

[1]  Counts IV and V are asserted in Plaintiffs' capacity as subrogee.

[2]  On August 29, 2012, the Court dismissed Count VI of the Amended Complaint without prejudice.  Doc. No. 28. On September 27, 2012, the Court denied Plaintiffs' motion to amend and/or correct, by interlineation, Count VI of

On February 13, 2012, the Court entered its case management and scheduling order, setting the deadlines to disclose expert reports as October 2, 2012, for Plaintiffs and November 1, 2012, for Defendant.  Doc. No. 13 at 1.  The deadline to file dispositive, Daubert and Markman motions was set for March 29, 2013.  The parties joint final pretrial statement is due April 13, 2013; all other motions, including motions in limine, are due June 3, 2013; and the trial term begins August 1, 2013.  Doc. No. 13 at 1-2.  On September 27, 2012, the Court granted the Plaintiff's unopposed motion to extend the deadline to disclose expert reports to November 1, 2012, for Plaintiffs and December 1, 2012, for Defendant.  Doc. No. 49.

On March 15, 2013, Plaintiffs moved for leave to disclose James B. Reames as a rebuttal expert (hereafter "Motion").  Doc. No. 63.  On March 29, 2013, Defendant filed its response.  Doc. No. 65.   On April 1, 2013, the District Court referred the Motion to the undersigned to issue a report and recommendation to the Court as to the appropriate disposition.  Doc. No. 68.

## II. LAW

Rule 26(a)(2)(D), Federal Rules of Civil Procedure, provides that the parties must disclose the identities of their expert witnesses, and any written reports, in the time ordered by the court.  Absent a stipulation or court order, expert witnesses must be disclosed at least 90 days before the case is set for trial.  Fed. R. Civ. P. 26(a)(2)(D)(i).  If the expert witness is offered solely to contradict or rebut an opposing party's expert, the disclosure must be made "within 30 days after the other party's disclosure."  Fed. R. Civ. P. 26(a)(2)(D)(ii).

A party that fails to identify a witness as required by Rule 26(a) is not allowed to use the "witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  In addition, or as an alternative,

---

the Amended Complaint.  Doc. No. 48.

to imposing this sanction, the court may also, upon motion and providing an opportunity to be heard, order the non-complying party to pay the reasonable expenses incurred due to the failure; inform the jury of the party's failure; and "impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Fed. R. Civ. P. 37(c)(1)(A)-(C).

Failure to comply with Rule 26(a) is substantially justified when a reasonable person would be satisfied that "'parties could differ as to whether the party was required to comply with the disclosure request. The proponent's position must have a reasonable basis in law and fact. The test is satisfied if there is [a] genuine dispute concerning compliance.'" *Ellison v. Windt*, No. 6:99–CV–1268–ORLKRS, 2001 WL 118617 at *2 (M.D. Fla. Jan. 24, 2001) (quoting *Chapple v. Alabama,* 174 F.R.D. 698, 701 (M.D.Ala.1997)). Failure to comply with Rule 26(a) is harmless when the party receiving the disclosure suffers no prejudice. *Id.* It is in the trial court's discretion to exclude a witness due to a party's failure to comply with discovery limits. *See Domke v. McNeil-P.P.C., Inc.*, No. 95–382–T–CIV–17A, 1996 WL 567165 at *1 (M.D. Fla. Sept. 26, 1996).

## III. ANALYSIS

In the Motion, Plaintiffs acknowledge that they failed to disclose Mr. Reames within thirty (30) days of Defendant's disclosure of its expert, Paul Ginsberg, but assert they did not become aware of the need for a rebuttal expert until they took Mr. Ginsberg's deposition on February 22, 2013. Doc. No. 63 at 1. Plaintiffs assert that they elicited information from Mr. Ginsberg during his deposition about the methodology he used in formulating his opinions that were not included in his expert report. Doc. No. 63 at 1.[3] Specifically, Mr. Ginsberg testified that "sounds are transformed into electrical signals that can be stored, and the technical word the

---

[3] Plaintiffs attach Mr. Ginsberg's expert report and excerpts from Mr. Ginsberg's deposition to the Motion. Doc. Nos. 63-1; 63-2.

[sic] amplification of these signals is 'gain.'  The 'gain' creates the volume that is heard, and if microphones are not properly calibrated, you will hear a greater volume from one microphone than from another."  Doc. No. 63 at 3 ¶ 9.  Plaintiffs indicate that Mr. Ginsberg also "testified that he did not have any information about the calibration of the microphones in the Aircraft, and whether the sounds coming into the Pilot, Co-Pilot, or cockpit area microphones were at the same level or different levels."  Doc. No. 63 at 3 ¶ 10.  In essence, Mr. Ginsberg assumed the sound on the WAV files he created from the Aircraft's cockpit voice recorder accurately reflected the actual sounds in the cockpit.  Doc. No. 63-2 at 4.[4]  Upon inquiry, he testified that he did not discern any noticeable difference in the gain between the two pilot microphones and the cockpit area microphone.  Doc. No. 63-2 at 4.  Plaintiffs point out that Mr. Ginsberg did not discuss "gain," his lack of information about the microphones' calibration or that "there is some gain when the cockpit voice recorder is downloaded to another tape" in his expert report.  Doc. No. 63 at 3 ¶¶ 9-10.

Although Mr. Ginsberg did not analyze or address gain, Plaintiffs maintain they should be allowed to designate a rebuttal expert because Mr. Ginsberg had a general knowledge of gain and, upon inquiry, he testified that he did not discern any noticeable difference between the gain in the two pilot microphones and the cockpit area microphone.  Plaintiffs want to disclose Mr. Reames as a rebuttal expert because they "do not agree that Mr. Ginsberg formulated his opinions using proper scientific methodology . . . ."  Doc. No. 63 at 2.  Plaintiffs represent that Mr. Reames will explain the concept of "gain," testify that without knowing the gain a person cannot determine whether a sound is louder in one microphone versus another, and testify that Mr. Ginsberg's methodology does not support his conclusions.  Doc. No. 63 at 4 ¶¶ 14-15.

---

[4]  The WAV files Mr. Ginsberg relied upon for his opinions were created by him after downloading the actual cockpit voice recorder audio and converting it to a WAV file format.  Doc. No. 63-1 at 2.

Plaintiffs assert that they disclosed Mr. Reames as soon as practicable upon discovering the need for a rebuttal expert and, even though the discovery deadline has passed, there is "ample time to schedule one deposition prior to trial, and [Defendant] will not be prejudiced by this late disclosure." Doc. No. 63 at 4 ¶ 17.

Plaintiffs contend that the Court should look at four factors in determining whether their failure to comply with Rule 26 is substantially justified or harmless:  1) the importance of the excluded testimony; 2) the explanation given for failing to comply with the required disclosure; 3) the prejudice that would result in allowing the testimony; and 4) the availability of a continuance to cure the prejudice, citing *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, No. 09-60351-CIV, 2010 WL 1837724 at *4 (S.D. Fla. May 3, 2010); *Evans v. Matrixx Initiatives, Inc.*, No. 3:07-cv-357-J-33JRK, 2008 WL 2625528 at *1 (M.D. Fla. Mar. 12, 2008). Doc. No. 63 at 5.

Plaintiffs assert that Mr. Reames' testimony is "extremely important" because he will testify about the concept of "gain" and explain that Mr. Ginsberg's opinions are not based on any recognized scientific methodology.   Doc. No. 63 at 5.   Plaintiffs contend that they were substantially justified in failing to disclose Mr. Reames earlier because they did not learn of the need for rebuttal expert until they deposed Mr. Ginsberg.  Doc. No. 63 at 6.  Plaintiffs indicate that Defendant will not be prejudiced because they have not disclosed any other experts regarding sound analysis; Mr. Reames' testimony will merely counter Mr. Ginsberg's testimony; and there is sufficient time for Defendant to depose Mr. Reames prior to trial.  Doc. N. 63 at 6. Finally, Plaintiffs contend that even if Defendant identifies prejudice, a continuance will not be necessary because the parties are "permitted to continue discovery outside the discovery period

by agreement, and one deposition will not require  significant effort on [Defendant's] part." Doc. No. 63 at 7.

Defendant argues that all of its designated experts discussed the cockpit voice recorder (hereafter "CVR") and the sounds heard on the recorder in their expert reports, and all were cross-examined about the CVR.  Doc. No. 65 at 3-4 ¶¶ 14-15.  Defendant asserts that it was apparent during Mr. Ginsberg's deposition that Plaintiffs prepared with an undisclosed expert "given the technical questions asked about his methods and techniques."  Doc. No. 65 at 4 ¶ 16. Despite having the experts' reports discussing the CVR, cross-examining the experts on same and preparing with an expert, Defendant contends that Plaintiffs never disclosed Mr. Reames after Mr. Ginsberg's deposition was concluded.  Doc. No. 65 at 3-4 ¶¶ 14-16.  Defendant further asserts that "it is disingenuous to assume that Plaintiff was unaware of the nature of Mr. Ginsberg's testimony when the Plaintiff was in possession of the CVR since inception, reviewed Cessna's expert disclosures, studied the CVR, and consulted with a CVR expert prior to Mr. Ginsberg's deposition."  Doc. No. 65 at 5 ¶ 22.  Thus, Defendant contends that Plaintiffs have known about the substance of its experts' testimony, there has been no new evidence or testimony concerning the CVR and Plaintiffs consulted with an expert prior to Mr. Ginsberg's deposition.  Defendant maintains that Plaintiffs' request to add Mr. Reames as a rebuttal expert should be denied because Plaintiffs purposefully waited to disclose Mr. Reames until the discovery deadline, citing *Port Terminal & Warehousing Co. v. Johns S. James Co.*, 695 F.2d 1328, 1335-36 (11th Cir. 1983).  Doc. No. 65 at 8-9.

Defendant asserts that it will be prejudiced if Plaintiffs are permitted to designate Mr. Reames as a rebuttal expert because it "would need to consult its expert, review the report and depose Plaintiff's expert, revaluate [sic] its prepared dispositive motions, potential *Daubert*

motions[5] and potentially prepare new arguments and opinions particularly its CVR expert, accident reconstruction expert and pilot expert." Doc. No. 65 at 6 ¶ 31.  Defendant contends that it would be more appropriate to deny the Motion and permit "Plaintiffs to cross examine Mr. Ginsburg [sic] on the issues relating to his methodology.  Plaintiffs also have the option to challenge his opinions with a Daubert Motion, neither of these options would impact the Court's scheduling Order and its deadlines."  Doc. No. 65 at 7 ¶ 34.

Mr. Ginsberg did not reference or discuss gain in his expert report.  *See* Doc. No. 63-1. Mr. Ginsberg's expert report, however, details the information and procedures he used in reaching his conclusions.  Specifically, Mr. Ginsberg indicated that he reviewed the CVR recordings, converted the recordings to "high-resolution WAV files," observed a sound identified as a powered reverse thruster which was greater in the right microphone, compared the CVR recordings to a right thrust reverser test in a different Cessna citation, and found that the "nature of the thrust reverser sounds were identical in nature, and frequency distribution."  Doc. No. 63-1 at 1-6.  By accurately disclosing the materials and procedures used in reaching his opinion, it is apparent that Mr. Ginsberg did not attempt to calibrate or measure gain.  *See* Doc. No. 63-1.[6]  Nor did Mr. Ginsberg offer an expert opinion on gain during his deposition.  As a result, Plaintiffs have not demonstrated that they were substantially justified in failing to designate Mr. Reames as a rebuttal expert on the issue of gain within the time set forth in Rule 26(a)(2)(D)(ii).

Plaintiffs indicate that their rebuttal expert will testify that Mr. Ginsberg's opinions are not based on a recognized scientific methodology.  Doc. No. 63 at 5-6.  This, however, is the

---

[5] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[6] At his deposition, Mr. Ginsberg confirmed that he did not have any information about how the CVR microphones were calibrated and did not factor it into his analysis.  Doc. No. 63-2 at 3-4.

proper subject of a *Daubert* motion, which Plaintiffs filed on March 29, 2013. *See* Doc. No. 64. Plaintiffs also assert that Mr. Reames is necessary to explain the scientific concept of gain. Doc. No. 63 at 5. It is unclear why Mr. Reames is necessary to explain this concept because Mr. Ginsberg agreed that gain is simply the amplification of sound waves and the electrical signals. Doc. No. 63-2 at 6. Further, Mr. Ginsberg admitted that he did not seek any information about the calibration of the microphones that recorded the sound in the CVR and did not factor any differences in calibration in his analysis. Doc. No. 63-2 at 3-4. To the extent Mr. Ginsberg opined that there was no discernible difference in gain between the pilot microphones and the cockpit area microphone, that is not an expert opinion but, rather, a lay opinion based solely upon the audio files themselves which may be presented to the jury.

Plaintiffs' assertion that Defendant will not be prejudiced because it has sufficient time to depose Mr. Reames prior to trial is likewise unpersuasive. The Court recognizes that some cases support the notion that a party does not suffer prejudice if it has sufficient time to depose the late disclosed expert prior to trial. *See Ellison*, No. 6:99–CV–1268–ORLKRS, 2001 WL 118617; *Warfield v. Stewart*, No. 2:07-cv-332-FTM-33SPC, 2009 WL 1515741 (M.D. Fla. June 1, 2009). These cases are distinguishable.

In *Ellison*, No. 6:99–CV–1268–ORLKRS, 2001 WL 118617 at *3, the expert's report was disclosed two weeks after the deadline and with ample time in the discovery period to depose the expert. However, the opposing party did not move to exclude the expert until after the discovery deadline. *Id.* In determining there was no prejudice, the court indicated that "when . . . a party fails to promptly seek enforcement of his rights, any prejudice suffered arises largely from the party's own inaction." *Id.* In *Warfield*, No. 2:07-cv-332-FTM-33SPC, 2009 WL 1515741 at *3, the court determined that plaintiff would not be prejudiced by the late

disclosure of an expert because defendant agreed to extend the discovery period so plaintiff could depose the expert.

In contrast to the aforementioned cases, Plaintiffs waited until March 15, 2013, before moving to designate Mr. Reames as a rebuttal expert. This was over three months after Defendant's deadline for expert disclosures and approximately three weeks after taking Mr. Ginsberg's deposition.[7] Defendant did not cause this delay and the delay, as set forth above, is not substantially justified. If Plaintiffs had timely disclosed Mr. Reames as a rebuttal expert within thirty (30) days of December 1, 2012, Defendant would have had ample time to depose him before the discovery deadline. Instead, the discovery deadline, dispositive motions and *Daubert* motions deadlines have passed. Doc. No. 13 at 1. The parties' joint final pretrial statement is due April 30, 2013, and all other motions, including motions in limine, are due June 3, 2013.[8]

Because Plaintiffs did not timely disclose Mr. Reames, Defendant has not had the opportunity to review his expert report or his qualifications. As a result, Defendant was unable to account for his testimony when filing its motion for summary judgment. Defendant cannot challenge Mr. Reames's testimony with a *Daubert* motion because that deadline has passed. In light of the impending deadlines to file the joint final pretrial statement and any other motions, including motions in limine, the undersigned is not convinced that Defendant can depose Mr. Reames and fully comply with these deadlines absent an extension of time. Thus, Plaintiffs' unjustified failure to timely disclose Mr. Reames as a rebuttal expert has prejudiced Defendant

---

[7]  The transcript of Mr. Ginsberg's deposition indicates that Defendant's counsel had identified the issue of gain prior to deposing Mr. Ginsberg. Doc. No. 63-2 at 3-8. Despite questioning Mr. Ginsberg about gain at the deposition, Defendant nevertheless waited approximately three weeks before moving to disclose Mr. Reames as a rebuttal expert.

[8] On March 29, 2013, Defendant filed its motion for summary judgment. Doc. No. 67.

by preventing Defendant from challenging his testimony with a *Daubert* motion or accounting for his testimony in its motion for summary judgment.  It also does not appear that Defendant can fully and timely comply with the future deadlines set by the Court absent a continuance, which Plaintiffs have not agreed to.  Accordingly, it is **RECOMMENDED** that the Motion be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** in Orlando, Florida on April 12, 2013.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy