UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**WM AVIATION, LLC and TRICOR INTERNATIONAL CORPORATION,**

      Plaintiffs,

v.                                                              Case No:  6:11-cv-2005-Orl-36GJK

**CESSNA AIRCRAFT COMPANY,**

      Defendant.

## ORDER

This cause comes before the Court upon the Report and Recommendation filed by Magistrate Judge Gregory J. Kelly on May 3, 2013. (Doc. 88.) In the Report and Recommendation, Judge Kelly recommends granting the *Daubert* motion filed by the Plaintiffs, WM Aviation, LLC ("WM Aviation") and Tricor International Corporation ("Tricor") (collectively "Plaintiffs"), Plaintiffs' Fed. R. Evid. 702 and *Daubert* Motion Regarding Cessna's Expert, Paul Ginsberg (Doc. 64) ("Ginsberg *Daubert* Motion"). On May 17, 2013, Defendant Cessna Aircraft Company ("Cessna" or "Defendant") filed its Objections to the Report and Recommendation ("Objections"). (Doc. 94.) Plaintiffs filed their Opposition to Defendant's Objections on June 3, 2013 ("Opposition"). (Doc. 102.) Accordingly, the Report and Recommendation is ripe for review.

### I.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 72(b)(2), in pertinent part, provides that "a party may serve and file specific written objections to . . . proposed findings and recommendations." Once a timely objection to the Report and Recommendation is made, the district judge "shall make a

*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *Jeffrey S. v. State Board of Education of State of Georgia,* 896 F.2d 507, 512 (11th Cir. 1990). The district judge may accept, reject, or modify in whole or in part, the report and recommendation of the magistrate judge. Fed. R. Civ. P. 72(b)(3). The district judge may also receive further evidence or recommit the matter to the magistrate judge with further instructions. *Id.* The district judge reviews legal conclusions de novo, even in the absence of an objection. *See Cooper-Houston v. Southern Ry.*, 37 F.3d 603, 604 (11th Cir. 1994).

## II. ANALYSIS

Defendant Cessna asserts two objections to Magistrate Judge Kelly's Report and Recommendation: (1) the Magistrate Judge committed error in his application of the *Daubert* factors; and (2) contrary to the Magistrate Judge's recommendation, Mr. Ginberg's testimony would be both relevant and helpful to a jury.

As the Magistrate Judge noted in the Report and Recommendation, Rule 702 of the Federal Rules of Evidence controls the admission of expert testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 compels district courts to perform a "gatekeeping" function, an exacting analysis of the foundations of expert opinions to ensure they meet the standards for admissibility under the rule. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citations and

2

quotations omitted). This requirement is to ensure the reliability and relevancy of expert testimony. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 1176 (1999).

Thus, in determining the admissibility of expert testimony under Rule 702, courts must engage in a rigorous three-part inquiry, determining whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (citations omitted). "While there is inevitably some overlap among the basic requirements – qualification, reliability, and helpfulness – they remain distinct concepts and the courts must take care not to conflate them." *Id.* It is the proponent of expert testimony who bears "the burden to show that his expert is qualified to testify competently regarding the matters he intended to address; the methodology by which the expert reached his conclusions is sufficiently reliable; and the testimony assists the trier of fact." *Id.* (citations and internal quotations omitted).

The Supreme Court has stated that, in order for a trial judge to determine whether the expert is proposing to testify to scientific knowledge that will assist the trier of fact to understand or determine a fact in issue, this entails "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993). Some factors that bear on this inquiry are:

> 1) whether the expert's theories, methods or techniques can be or have been tested;

3

>   2) whether the technique, method, or theory has been subject to peer review and publications;
>   3) whether the known or potential rate of error of the technique when applied is acceptable; and
>   4) whether the technique, method, or theory has been generally accepted in the scientific community.

*Daubert*, 509 U.S. at 593-94.  The Supreme Court was clear, however, that this was not a definitive or exhaustive list and was intended to be applied in a flexible manner.  *Id.*; *see also United Fires and Casualty Co. v. Whirlpool Corp.*, 704 F.3d 1338, 1341 (1999).  The focus is on the scientific validity and the evidentiary relevance and reliability of the principles and methodology underlying a proposed submission.  *Daubert*, 509 U.S at 594-95.

>   **A.   The Magistrate Judge's Application of the *Daubert* Factors**
>
>   *1.   Whether the Magistrate Judge Applied the Daubert Factors in a Rigid Manner*

Cessna argues that instead of applying these factors in a flexible manner as the Supreme Court dictated, the Magistrate Judge incorrectly applied them in a rigid manner.  Obj. at 8.  In doing so, Cessna contends, the Magistrate Judge's recommendation was based on "erroneous facts or a clear error of judgment."  *Id.*

Here, Cessna mischaracterizes the Magistrate Judge's recommendation when it stated: "The Magistrate Judge rigidly applied the *Daubert* factors by summarily concluding that because Cessna did not address any of these factors . . ., its failure to do so 'demonstrates why Mr. Ginsberg's opinion is not admissible,' . . . [and that] that would not form a basis in and of itself to reject Mr. Ginsberg's testimony."  *Id.* at 9-10.  In fact, there were two factors that demonstrated to the Magistrate Judge that Mr. Ginsburg's opinion was inadmissible.  *See* R&R at 12.  One was indeed that Cessna did not address any of the *Daubert* factors aside from generally asserting that Mr. Ginsburg used peer reviewed techniques and approved scientific techniques.  *Id.*  In addition, however, the Magistrate Judge found problematic the fact that Mr.

4

Ginsburg did not opine that the right reverse thruster on the aircraft at issue (the "Aircraft") had a uniquely identifiable sound that could be plotted, but that the spectrogram plots created by Mr. Ginsburg merely indicated that the sound was consistent with what he heard. *Id.*

Cessna must remember that the burden is on it to establish the admissibility of its proposed expert's opinions. Although it is true that the *Daubert* factors neither necessarily nor exclusively apply to all experts in every case, the trial court *may* consider one or more of those factors when doing so will help determine the reliability of an expert's opinion or testimony. *Kumho*, 526 U.S. at 141. Here, it was Cessna that referenced the *Daubert* factors in its response to the Ginsburg *Daubert* Motion by stating, generally, that Mr. Ginsburg used peer reviewed techniques and approved scientific techniques. Doc. 78 at 4 ("Response"). Yet, Cessna did not provide any further information specifying what peer group reviewed the techniques, who approved the techniques, or who deemed the techniques scientific besides Mr. Ginsburg.

Once a party has alluded to the fact that one or more of the *Daubert* factors has been met, the burden is on that party to provide a basis for making that statement in order to enable the Court to make a determination as to whether the statement is valid. Here, Cessna did not do so. That omission, the fact that Cessna did not address any of the other *Daubert* factors – not even to state why one or more of those factors did not apply to this expert's opinion – and Mr. Ginsburg's failure to opine as to whether the Aircraft's right reverse thruster had a uniquely identifiable sound that could be plotted on the audio spectrogram together convinced the Magistrate Judge that Cessna had failed to fulfill its burden of establishing that Mr. Ginsburg's opinion was admissible under Rule 702. *See Kumho*, 526 U.S. at 156 (emphasizing that the fact that none of the *Daubert* factors indicated that the testimony was reliable, that the expert's own analysis revealed no countervailing factors operating in favor of admissibility that could

5

outweigh those identified in *Daubert*, and that the parties identified no such factors in their briefs, *taken together*, indicated that the expert's testimony was unreliable); *id.* at 158 (concluding that it was within the trial court's discretion to find the expert's testimony inadmissible when the court based its decision upon the expert's failure to satisfy either the *Daubert* factors *or any other* set of reasonable reliability criteria). Here, the Magistrate Judge did not exclusively or rigidly rely on the *Daubert* factors in concluding that Mr. Ginsburg's opinion was predicated on the *ipse dixit*[1] of Mr. Ginsburg and should not be admitted. R&R at 12. Thus, Cessna's objection here fails.

### 2. *Whether Mr. Ginsberg's Testimony Satisfied Daubert*

Cessna next argues that the Magistrate Judge did not articulate why he believed Mr. Ginsburg's testimony did not satisfy the reliability factors outlined in *Daubert* and failed to consider reliable data that formed the basis of Mr. Ginsberg's opinion. Obj. at 10. These objections have no merit.

First, as noted above, the Magistrate Judge determined that Cessna did not address certain *Daubert* factors and found Cessna's general statement that Mr. Ginsburg satisfied other factors to be unsupported. Next, the Court considers the data Cessna argues the Magistrate Judge failed to consider in determining that Mr. Ginsburg's testimony was unreliable. Cessna states that the Magistrate Judge failed to consider: 1) that Mr. Ginsburg studied approximately 25 to 30 Cessna Citation aircraft landings; 2) that Cessna provided Mr. Ginsburg with a test recording of purportedly the exact landing scenario of the Aircraft that Cessna recreated using the same model aircraft; 3) that Mr. Ginsburg determined that he heard the sound of a right reverse thruster in this test recording, and he plotted the frequencies of this sound onto a visual aid; 4) that Mr.

---

[1] *Ipse dixit* means: "He himself said it; a bare assertion resting on the authority of an individual." Black's Law Dictionary (Rev. 4th Ed. 1968).

6

Ginsburg studied the Aircraft's cockpit voice recorder ("CVR") channels; 5) that Mr. Ginsburg matched a sound on the CVR channels that he identified as the reverse thruster that he found to be identical to the test aircraft sample provided by Cessna; 6) that Mr. Ginsburg plotted the frequencies of this sound from the CVR onto a visual aid and compared this plot to the test recording plot; and 7) that Mr. Ginsburg saw that the visual frequencies of both plots matched. Obj. at 10-11. Cessna argues that this audible matching, followed by time and frequency analysis comparisons, are accepted standard procedures. *Id.* at 11.

The above passage contains a mixture of method and data. The data consists of: 1) the 25 – 30 Cessna Citation aircraft landings Mr. Ginsburg studied; 2) the test recording provided by Cessna; and 3) the sounds from the Aircraft's CVR channels. Mr. Ginsburg then used this data 1) to compare the sounds on the test recording to the sounds from the CVR channels (the so-called "audible matching"), and 2) to create and compare the visual frequency plots of the test recording to those of the CVR channels (the so-called "frequency matching").

First, Cessna's claim that Mr. Ginsburg studied approximately 25 – 30 Cessna Citation aircraft landings is unsupported by the record. Mr. Ginsburg makes no mention of these observations in either his report (Doc. 78-1) or in his deposition testimony. Cessna merely notes in paragraph 34 of its Response to the Ginsburg *Daubert* Motion, without citation, that: "multiple Cessna Citation landings were studied by Mr. Ginsburg." Resp. ¶ 34. At the end of this paragraph, a citation to Mr. Ginsburg's deposition is provided. *Id.* This deposition passage asks: "What information did you get from that YouTube demonstration that played any role in your analysis in th[is] case?" *See* Doc. 78-5 (Ginsburg Dep. 28:6-8.) Mr. Ginsburg's response was: ". . . I watched and listened to a number of landings of Citations and noted the increase in sound and characteristics of the sounds when the reverse thrusters were deployed and activated or

7

powered." *Id.* at 28:9-14.  This deposition excerpt reveals that Mr. Ginsburg did testify that he watched and listened to Cessna Citation aircraft landings on YouTube, but does not specify the number of landings observed.  Moreover, the Magistrate Judge did take note of Mr. Ginsburg's viewing of these online videos but concluded that his opinion would not be helpful to a jury in this respect because viewing videos was "within the perception and understanding of a lay person.  (R&R at 9, 14.)  The Magistrate Judge observed: "Although Defendant asserts that a typical lay juror has no experience identifying the sound of a thrust reverser, Mr. Ginsberg himself admitted that his knowledge of what a reverse thruster in a Cessna Citation sounds like was gleaned from viewing and listening to online videos." *Id.* at 13-14.

Second, the Magistrate Judge also considered the fact that a test recording was provided by Cessna to Mr. Ginsburg, stating: "In formulating his expert report, Mr. Ginsburg obtained . . . a recording of a 'right-side reverse thruster' tested on a different Cessna Citation aircraft . . . ." *Id.* at 8.  From this, the Magistrate Judge concluded: "Listening to a recording and determining whether a particular sound can be heard is undoubtedly within the province of a lay person."  *Id.* at 14.

Third, the Magistrate Judge also considered that Mr. Ginsburg listened to sounds from the Aircraft's CVR channels, stating: "In formulating his expert report, Mr. Ginsburg obtained three recordings from the Aircraft's cockpit voice recorder . . . ." *Id.* at 8.  The Magistrate Judge noted that: "Defendant admits that listening to the CVR allows a person to hear the pilots' attempts to slow the aircraft by using the very thrusters they have just partially deactivated." *Id.* at 13.  From this, the Magistrate Judge also concluded that: "Listening to a recording and determining whether a particular sound can be heard is undoubtedly within the province of a lay person." *Id.* at 14.

As far as the frequency matching "method" that Mr. Ginsburg used, the Magistrate Judge explained that the problem with this is that it is completely based on what Mr. Ginsburg says he identified as a right reverse thruster sound, and that determination was based on what he heard, from both the test recording and the CVR channels. *Id.* at 12. There was no independent basis for determining that the plot frequencies were both created from the sound of a right reverse thruster *apart from* Mr. Ginsburg stating that that is what it was. *Id.* Thus, the issue is not whether the frequency plots match, but rather whether the frequencies themselves are of a right reverse thruster sound. *Id.* As for the audible matching method, the Magistrate Judge again noted that, since Mr. Ginsburg educated himself by listening to reverse thrusters and comparing those sounds to the sounds from the CVR, so too could a jury. *Id.* at 14.

        *3.     Whether The Magistrate Judge Improperly Weighed the Credibility of Mr. Ginsberg's Testimony and Relied on Inadmissible Expert Testimony*

Here, Cessna argues that the Magistrate Judge erred in relying on inadmissible expert testimony regarding the concept of "gain," an amplification of signals that creates the volume heard. Obj. at 12. Cessna also argues that any criticism regarding Mr. Ginsburg's failure to consider "gain" goes to the weight of the testimony, not to its admissibility. *Id.*

First, Cessna argues that the excluded testimony of the rebuttal expert, James B. Reames ("Reames"), offered to challenge the lack of information available to Mr. Ginsburg regarding the calibration of the microphones in the cockpit area and the "gain" when the CVR was downloaded to another tape. *Id.* Cessna contends that the Magistrate Judge relied on this inadmissible testimony to support his conclusion that Mr. Ginsberg's testimony was unreliable. *Id.* Plaintiffs correctly note that the Magistrate Judge did not refer to Mr. Reames' opinions or proposed testimony in the Report and Recommendation. Opp. at 14. In fact, Mr. Ginsburg testified in his deposition that he had no information regarding the calibration of the Aircraft's

pilot microphones (Ginsburg Dep. 59:13-60:7) and admitted that he did check for or test the "gain" in the microphones, "[t]he amplitude of the signal from each of the microphones" (Ginsburg Dep. 60:8-66:19). The Magistrate Judge cited to the portions of Mr. Ginsburg's deposition where Mr. Ginsburg discussed calibration and "gain," and also used the definition of "gain" used by Mr. Ginsburg in his deposition. R&R at 9.

Second, with respect to the Magistrate Judge's analysis, he noted, in a footnote, that Mr. Ginsburg's opinion that the right reverse thruster was activated depended on the volume he heard on the right side microphone even though he had no knowledge of the gain in the microphones. *Id.* at 12 n. 5. The Magistrate Judge's main point, however, as noted above, was to challenge the applicability of the frequency plots as they were completely based on what Mr. Ginsburg says he heard as a right reverse thruster sound and had no independent source of identification. *Id.* at 12. Thus, Cessna's objections here have no merit.

    **B.**    **The Magistrate Judge's Determination that Mr. Ginsberg's Testimony Was Neither Relevant Nor Helpful to the Jury**

Cessna argues that, contrary to the Magistrate Judge's determination, Mr. Ginsburg's testimony and the spectrograph plots he created purportedly showing that the reverse thruster sound was coming from the right thruster would be relevant and helpful to a jury. Obj. at 12. Expert testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See Frazier*, 387 F.3d at 1260 (citations omitted). It must also be relevant to an issue in the case. *See Daubert*, 509 U.S. at 591.

Cessna contends that the Magistrate Judge was incorrect in concluding that whether the Aircraft's right reverse thruster was activated was not relevant to Cessna's affirmative defense alleging that the Aircraft's pilots were negligent, which caused or contributed to Plaintiffs'

10

alleged damages. Obj. at 13; R&R at 13. The Magistrate Judge concluded that Mr. Ginsburg's testimony "w[ould] not be helpful to the jury because it is not related to an issue in this case." R&R at 13.

Cessna alleged as an affirmative defense that the pilots "may have acted negligently in failing to properly operate . . . the [A]ircraft . . . ." Doc. 40 at 8 ("Amended Answer"). In Cessna's Response to the Ginsburg *Daubert* Motion, it argues that "[d]ue to the crew's lack of familiarity with the aircraft's systems[,] they improperly applied reverse thrust to only one engine upon landing, which resulted in the aircraft veering off the runway." Resp. at 2 (emphasis omitted). Thus, clearly, if the pilots activated the right reverse thruster during landing, this would support Cessna's affirmative defense that the pilots were negligent and caused the crash. Accordingly, Mr. Ginsburg's testimony regarding whether a right reverse thruster can be heard on the Aircraft's CVR would be relevant to whether the right reverser thruster was activated improperly during the landing.

Cessna also contends that Mr. Ginsburg's testimony would be helpful to a jury because they are not qualified to determine the issue of whether a right reverse thruster was activated "without enlightenment from those having a specialized understanding of the subject involved in the dispute." Obj. at 14 (quoting the advisory committee notes from Fed. R. Evid. 702). Cessna goes on to state that: "Mr. Ginsburg's testimony will explain to the jury what the right reverse thruster sounds like, how that sound is depicted on the CVR and his spectrogram will visually help the jury to understand . . . the deployment of the right reverse thruster by the pilots while landing the aircraft." Obj. at 14. The problem here is that Mr. Ginsburg cannot be said to have a specialized understanding of the sound of a right reverse thruster where his determination as to

what constitutes that sound is based on unreliable means, as the Magistrate Judge has concluded, a conclusion with which this Court agrees.

## III. CONCLUSION

The Court agrees with the Magistrate Judge that Defendant Cessna has failed to meet its burden of establishing that Mr. Ginsburg's opinion is admissible under Federal Rule of Evidence 702. *See* Fed. R. Evid. 702. Therefore, after careful consideration of the Report and Recommendation of the Magistrate Judge, in conjunction with an independent examination of the file, the Court is of the opinion that, except with respect to the Magistrate Judge's determination as to whether Mr. Ginsburg's testimony would be relevant, the Report and Recommendation should be adopted, confirmed, and approved.

Accordingly, it is hereby **ORDERED and ADJUDGED**:

1. The Report and Recommendation of the Magistrate Judge (Doc. 88) is adopted, confirmed, and approved in all respects and is made a part of this Order for all purposes, including appellate review, except with respect to the Magistrate Judge's determination as to whether Mr. Ginsburg's testimony would be relevant.

2. Plaintiffs' Fed. R. Evid. 702 and *Daubert* Motion Regarding Cessna's Expert, Paul Ginsberg (Doc. 64) is **GRANTED.** Mr. Ginsberg's testimony and opinions are excluded from evidence at trial.

**DONE** and **ORDERED** in Orlando, Florida on October 18, 2013.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties
United States Magistrate Judge Gregory J. Kelly